UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEVITA MAILEI,<br><br>        Petitioner,<br><br>    v.<br><br>DAVID MARIN, et al.,<br><br>        Respondents. | Case No. 5:26-cv-00831-SRM-DSR<br><br>**ORDER GRANTING *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [2]** |

Before the Court is Petitioner Tevita Mailei's ("Petitioner") *ex parte* application for a temporary restraining order ("*Ex Parte* Application"). Dkt. 2. Respondents do not oppose the *Ex Parte* Application. Dkt. 8 at 2 ("Respondents do not have an opposition argument that they are able to present."). The Court has reviewed the parties' arguments, relevant legal authority, and record in this case. The unopposed *Ex Parte* Application is **GRANTED**.

I.  **BACKGROUND**

Petitioner is a native and citizen of the Kingdom of Tonga. Dkt. 1. at 2. Petitioner immigrated to the United States in 1978 and became a lawful permanent resident. *Id.* at 2, 5. In October 2021, Petitioner was detained by Immigration and Customs Enforcement

("ICE") after he served a 46-month sentence in federal prison. *Id.* at 2. ICE later released him on his own recognizance in November 2021 pending his removal proceedings. *Id.* On June 3, 2025, ICE detained Petitioner at one of his appointments. Dkt. 1 at 2. In July 2025[1], an immigration judge ordered Petitioner removed from the United States to the Kingdom of Tonga or New Zealand *Id.* at 2, 5, 9. Petitioner appealed the removal order to the Board of Immigration Appeals, which was later dismissed. *Id.* at 5. According to Petitioner, the removal period began on July 24, 2025. *Id.* at 9. Petitioner states he has been detained for more than the presumptively reasonable six-month period and that his removal is not reasonably foreseeable. *Id.* at 9. He claims ICE has not provided him an update about obtaining travel documents or that they have made any arrangements to remove him to the Kingdom of Tonga or New Zealand. *Id.*

On February 20, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and this *Ex Parte* Application. *See* Dkts. 1, 2. He asserts two claims against Respondents. The first claim asserts that his ongoing detention violates the Fifth Amendment's Due Process Clause because his removal is not reasonably foreseeable. *See* Dkt. 1 at 9. And the second, related claim contends that his ongoing detention violates 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.4. *Id.* at 9–10. In the *Ex Parte* Application, Petitioner seeks a temporary restraining order requiring Respondents to immediately release him from custody and to reinstate him on his prior order of supervision. *Id.* at 6–7.

---

[1] There are conflicting dates in the Petition as to when the immigration judge ordered Petitioner removed from the United States, and in turn, when the removal period began. *Contrast* Dkt. 1 at 2 ("He was ordered removed by an Immigration Judge in August of 2025."), *with id.* at 2 (noting removal period began in July 2025), 5 (noting "IJ ordered him removed in July of 2025"), 9 (noting Petitioner's removal period began in July 2025). Because Petitioner is *pro se* and the majority of the allegations state that Petitioner was ordered removed or that the removal period began in July 2025, the Court will assume for purposes of this *ex parte* application that the operative removal date occurred sometime in July 2025.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs temporary restraining orders ("TRO"). A TRO is an extraordinary remedy meant to preserve the *status quo* and to prevent irreparable harm "just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

The standard for issuing a TRO and preliminary injunction is the same. *See Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1012 (C.D. Cal. 2020) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). To obtain a TRO, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a TRO is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a TRO under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant may obtain a TRO if he can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale

approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Given the exigent nature of a TRO, a movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a TRO. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

### III.  DISCUSSION

Petitioner argues he is entitled to temporary injunctive relief on his Fifth Amendment due process claim and his claim that his ongoing detention violates 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.4. *See* Dkt. 2. As discussed below, because Petitioner is entitled to the full scope of temporary injunctive relief based on his Fifth Amendment due process claim, the

Court declines to consider whether he is entitled to the same injunctive relief as to the remaining claim.

### A.   Likelihood of Success on the Merits

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These protections extend to all persons physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This includes noncitizens and those whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections before they are detained or removed. *See, e.g., A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

The Immigration and Nationality Act outlines the procedures for removing a noncitizen from the United States. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). When a noncitizen has been ordered removed, ICE must remove him from the United States within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the removal period. 8 U.S.C. § 1231(a)(2)(A); *see also* 8 C.F.R. § 241.3(a) ("Once the removal period defined in section 241(a)(1) of the Act begins, an alien in the United States will be

taken into custody pursuant to the warrant of removal."). If the noncitizen is not removed within 90 days, he must be released subject to supervision governed by 8 C.F.R. §§ 241.4 or 241.13. *See* 8 U.S.C. § 1231(a)(3).

It is not always possible, however, to effectuate removal within the first 90 days. *Zadvydas*, 533 U.S. 678, 701 (2001). Recognizing this practical reality, certain classes of noncitizens may be detained beyond the initial 90 days for a period reasonably necessary to secure the noncitizen's removal. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, the Supreme Court explained that 8 U.S.C. § 1231(a)(6) does not permit indefinite detention. 533 U.S. at 699. But the Supreme Court did hold that, under 8 U.S.C. § 1231(a)(6), a noncitizen may be detained for a presumptively reasonable six-month period to effectuate removal. *Id.* at 701. The Supreme Court further explained that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* The government may continue to detain a noncitizen, the Supreme Court stated, "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Because noncitizen detainees cannot be indefinitely detained, after the six-month has elapsed, the noncitizen may be released if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also* 8 C.F.R. § 241.13(d)(3). Assuming this showing can be made, the burden then shifts to the government to introduce evidence to refute that assertion. *Id.*; *see also* 8 C.F.R. § 241.13(e)–(g). The parties do not dispute that Petitioner has been detained for more than the presumptively reasonable six-month period. The question that remains is whether there is a significant likelihood of removal in the reasonably foreseeable future.

Petitioner has shown good reason to believe that there is no significant likelihood of his removal Kingdom of Tonga or New Zealand. According to Petitioner, since he was ordered removed, ICE has not provided him an update about obtaining travel documents or that they have made any arrangements to remove him to the Kingdom of Tonga or New Zealand. Dkt. 1 at 9. Notably, Respondents do not offer any evidence to show that ICE has

made any efforts to remove Petitioner. *See* Dkt. 8. These facts provide good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The burden thus shifts to Respondents to introduce evidence to refute this assertion, which they do not do.

Petitioner has thus made a clear showing that he is likely to succeed on this claim. This factor weighs in favor of granting temporary injunctive relief.

### B. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Petitioner has made a clear showing that Respondents' ongoing detention violates the Fifth Amendment Due Process Clause. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi* , 2025 WL 2084921, at *6 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata*, 2025 WL 3578207, at *3 ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

### C. Balance of Equities and Public Interest

The balance of equities and public interest tip in Petitioner's favor. Petitioner and the public have an interest in preventing the violation of Petitioner's constitutional rights. *See Bunnell v. Noem*, No. 2:25-cv-02259, 2025 WL 3707588, at *7 (D. Nev. Dec. 22, 2025). Respondents' interest, by contrast, is to effectuate Petitioner's removal. While Respondents' interest is significant, it "'does not override the public interest in protecting the safeguards of the Constitution.'" *Id.* (quoting *Domingo-Ros v. Archambeault*, No. 25-cv-1208, 2025 WL 1425558, at * 5 (S.D. Cal. May 18, 2025)).

Accordingly, this factor weighs in favor of granting temporary injunctive relief.

**D.    Bond**

A court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*.""" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

**IV.    CONCLUSION**

For the above reasons, the *Ex Parte* Application is **GRANTED** as follows:

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody. Respondents must file a declaration on or before February 27, 2026, confirming Petitioner has been released from immigration custody;

2. This order will remain in effect until March 25, 2026, at 5:00 p.m. This order may be extended for good cause or with Respondents' consent;

3. Respondents are **ORDERED TO SHOW CAUSE**, in writing, why a preliminary injunction should not issue. Their response is due by **March 4,**

**2026**. Petitioner may file a response by **March 11, 2026**. No hearing will be set unless the Court indicates otherwise.

**IT IS SO ORDERED.**

Dated: February 26, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE